Our third case for argument today is Chicago Wine Company v. Holcomb. Mr. Tanford Thank you. May it please the Court. First, I apologize. I'm recovering from a cold. I've been tested. It's not COVID. It's a cold. But it does make my voice a little strange. Ordering things online and having them delivered has become a common part of life. When it comes to wine, however, Indiana allows only in-state retailers to make home deliveries. Out-of-state retailers may not. If this were any product other than wine, other than alcohol, there would be no question that banning interstate transactions would violate the Dormant Commerce Clause. But because we are talking about Mr. Tanford, let me ask you a foundational question. Is there anything that prevents Chicago Wine from being an Indiana retailer? Any law? Yeah, any law. No, no. So it's simply Chicago Wine's choice. Yes, but it's an economic choice. Because we know businesses run – have only so much money to invest in so many things. The amount of money in the world is really very large. That's what you've just stated is an old fallacy. The question is whether they can make money by opening an outlet in Indiana, not whether it costs money to open an outlet in Indiana. But my question was a legal one. Is there anything that legally prevents it? No, there's nothing legally that prevents them from doing so. There is something legally, though, the other statute that once they had that would still prevent a consumer in Indiana from getting wine from Binney's or one of the other outlets that did not move to Indiana. Because we have two different sets of plaintiffs that present both sides of the Commerce Clause issue. The – I think the balance between Commerce Clause and 21st Amendment. Okay, all right. I've had a lot of trouble in this case. The Indiana wine legislation seems to be extraordinarily successful at producing cases that reach the Seventh Circuit. And I've seen more than my share. I believe you have ruled on all of them. No, oh, no. I wasn't on either of the two Levimoff panels. But we've got quite a lot. I found this more difficult than some of the others in part because, as your brief says, we're not challenging any state law. We're challenging the consequences of things that aren't in Indiana's law. And that makes it harder to figure out what's going on. So would it be fair to say that the core of your argument is that you believe it violates the Constitution not to allow a dealer, a retailer in Chicago, to have the same delivery options as a retailer in East Chicago? That's correct. Okay. That's really the core of what this case is about. That's the core. Again, there are two claims. That strikes me. Well, one by the retailer's side and one by the consumer's side. That I understand. Okay. But the home delivery ban, that is, delivery in one's own vehicle compared to delivery in one's own vehicle, is a straight, direct discrimination situation. But there's also the question of whether or not retailers not located in Chicago, located in California, which is the source of many of the wines that consumers cannot get, are not in Chicago. That I understand. But again, I just want to be sure I really understand what Indiana is doing. If you are a retailer in East Chicago, in Indiana, can you deliver wine by common carrier to a customer in Indiana? No. Okay. That was in one or the other. That was indirectly in the… It was in Vaughan. It was Lebanon 1, I think. Right. But there are so many of these, I lose the ability to remember their names. What? Just, they're all Levimoff. Levimoff. And your Honor will be happy to know that Levimoff, which ran a series of stores called Cap'n Cork in Lafayette, has now gone out of business. So there will be no more Levimoff cases, at least. I am sure there will be replacements. Mr. Tamford, can I ask you a similar factual question? Yes. Because I appreciate Judge Easterbrook's question on clarification. So, let's take Binnie's. We've been using Binnie's as a proxy. Binnie's in Chicago. Binnie's in Chicago today can't send one of its own delivery vans to a resident in Indiana to make a retail delivery. And the reason is because Binnie's can't get a permit to do that. Correct. Is that okay? Correct. That's the way that the statutory scheme intersects with each other. Yes. And it works from both sides because the second statute also would prohibit, I don't know how you'd enforce it, but it would prohibit the consumer from receiving the shipment. Because the consumer is similarly under a separate statute, prohibited from receiving any shipment from a retailer who does not hold a permit. And as it was conceded in this case, the state has no permit available for a retailer located outside the state of Indiana. Whether this is discriminatory directly because we have home deliveries, yes, home deliveries, no. Whether it is discriminatory in effect, the common carrier ban, because we have no other feasible way for most retailers to get their product to market. If they are discriminatory, then how one balances the 21st Amendment and the Commerce Clause has been set out in Granholm v. Heald and Tennessee Wine from the Supreme Court and from Lebomoff v. Rauner and Bowe v. Heath in this court. And they basically say that because stopping interstate— Just to be sure, I take it from what you've just said, that the Lebomoff, Illinois case is now dead. The Lebomoff, Illinois case is now dead because Lebomoff went out of business. Because Lebomoff is dead. And we lost standing. Right, and there was no decision on remand in that case. No decision on remand. Fine. But what they say is that if you have discrimination against interstate commerce, that strikes at the heart of the Commerce Clause. And therefore, what Judge Wood said, what the panel said in Lebomoff v. Rauner, which is the same thing the Supreme Court said in Tennessee Wine, was that means that the state must prove that the discrimination itself is necessary at some level. The 21st Amendment does not automatically trump Commerce Clause. It does not automatically legitimize all discriminatory aspects of the state's three-tier system. Mr. Tanford, I'm not intentionally fast-forwarding you. You know this area of law very well, and I want to get the benefit of an answer. I've lost, I think, every one of the cases that I've argued in front of Judge Easterbrook on this issue. I'm not sure that you can say I know the law well. Okay, my question is this. Where, in your view, or how, in your view, did the Sixth Circuit and the Eighth Circuit in their two decisions, where did they go wrong in their Tennessee Wine analysis? Well, the… I mean, both courts are well aware of Tennessee Wine. They're well aware it comes from the Supreme Court. There's discussion about it. They both come out in a way that you wish they wouldn't have. Where was the legal error in both courts' analysis vis-à-vis Tennessee Wine? Well, the Sixth Circuit case is a little difficult because there was a majority and a concurring opinion. Judge McKee, I know, I know. The concurring opinion said that that got to the sort of the factual matter. They thought the state had, in fact, met the standard by showing that there were special aspects of Michigan's regulatory system that did, in fact, justify that they could not meet those particular… enact those interests without the discrimination. And it said this were facts that the plaintiffs had not refuted. They said they did not necessarily concur with the reasoning of the main opinion. The reasoning of the main opinion, the error was it said that the 21st Amendment trumped the Commerce Clause. And Judge Sutton, in his opinion, said that he rejected what he called a skeptical level of scrutiny. Now, that conflicts with this circuit saying that when discrimination against interstate commerce is involved, there is a demanding or a heightened scrutiny. When you're thinking of this circuit's case, you're talking about Lebo Moffe, Illinois, Lebo Moffe against Rauner. And also the cases of – there's a City of Hammond case not involving alcohol that sets out the basic requirements of Commerce Clause scrutiny. And there is suggestion even in Bode v. Heath. In Bode v. Heath, this court found that the requirement that one show up face-to-face at a winery before you could get direct shipping was not discriminatory. Could I come back to your answer to Judge Scudder's question? Lebo Moffe, Illinois, our second Lebo Moffe case, expressly said it was disagreeing with the Second Circuit on the consequences of storefront requirements. In your view, is what the Sixth and Eighth Circuit are doing the same as what the Second Circuit was doing, or is it different? I want to figure out whether we've got a conflict here or whether you're asking us to create a conflict here. No, I think there's a – they also said the Eighth Circuit case affirmed based on a prior precedent of the Eighth Circuit. And in Lebo Moffe too, the panel also expressly disagreed with the Eighth Circuit's position. So I think that that is there. Can I try this? Yes. I find it very hard to believe. I know why lawyers write briefs this way. I get it. But I find it very hard to believe or to get me to accept that the Eighth Circuit and the Sixth Circuit ignored Tennessee wine. I don't think they ignored it. Okay. They had to have misapplied it. And what I'm trying to figure out is what, in your view, reflects the misapplication? Where did it go legally wrong in those courts at a higher level of particularity than you've answered thus far? In Tennessee wine and Granholm, the Supreme Court said that to justify a law, you had to show not only that it advanced a state interest, but also that other obvious, reasonable, nondiscriminatory alternatives would be unworkable. That is, a state is not under the Commerce Clause free to pick the most discriminatory of several options for regulating these sales. Neither the Eighth Circuit— Okay. So you're focused on the language in Tennessee wine about evidentiary backing and the availability of alternatives. And in your view, that— Neither of those decisions even discussed the availability of nondiscriminatory alternatives, despite the fact that that was—consists of seven pages of discussion of alternatives in Tennessee wine and an extensive discussion over three pages of looking at alternatives in Granholm. It is that—that is the core of our argument as to why this is different. And I have two minutes remaining, which I would like to save for rebuttal, unless there are further questions. Turn the mic. Mr. Kraft. Good morning, Your Honor. May it please the Court. Chicago Wine wants to sell wine to Indiana residents, but it doesn't want to become a participant in Indiana's three-tier system. Rather, it seeks preferential treatment in at least two key aspects. It wants to sell wine that doesn't come from Indiana wholesalers, but Indiana retailers can't do that. Second, it wants to ship wine to Hoosiers— Now, I understand this argument about the three-tier system, but you have a lot of trouble squaring that with the Lebemoff, Illinois case, do you not? I actually think the Lebemoff, Illinois case is distinguishable because there, the Illinois statute allowed retailers to ship via common carrier, where Indiana still requires— Forget about common carrier. Just talk about delivery. One of the issues in Lebemoff, Illinois, was whether allowing direct delivery wouldn't bust the three-tier system. And the Court was not impressed by that. And, of course, the plaintiffs say Indiana has busted its three-tier system all by itself by allowing direct shipments from wineries, for example. With respect to Rauner—Lebemoff, Illinois— that decision stressed that by allowing common carrier and doing away with the face-to-face requirement, that's what undermined the physical presence requirement. But the Court suggested that if you did have the—still had the face-to-face requirement, which Indiana law does because it requires delivery by trained employees, that you wouldn't have the problem of undermining the system. Now, with respect to the direct— You would certainly have the problem of undermining the system because Illinois retailers, by law, have to buy from Illinois wholesalers, not from Indiana wholesalers, right? And the reverse. So if you have any shipments without an in-state storefront, that shipment is coming from a source which is not a wholesaler in that state. It's just by definition. And Lebemoff didn't think that was fatal. So why is it fatal here? Well, I think— Sorry, Lebemoff, Illinois. There are too many Lebemoffs.  I think, first off, in the Lebemoff, Illinois decision, it was a depleting stage. It hadn't been a summary judgment. And there hadn't been records developed on anything to sort of show what the interests still were and what the concerns were. I think the other thing about the Lebemoff, Illinois case is that it really didn't grapple fully with the fact that the alcohol wouldn't be coming from Illinois wholesalers. But that's difficult to square. The idea that an out-of-state retailer can ship alcohol to an Indiana resident that has not gone through an Indiana wholesaler, hasn't gone through Indiana's three-tier system, is difficult to square with the Supreme Court's repeated opinions that the three-tier system itself is legitimate. But you found a way to make it work at the producer level, right? At the level of a producer in Napa can ship to an Indiana resident that way, and they're just obligated to get the license, remit all applicable taxes, including excise taxes. Yes. So it works at that level. Why can't it work at the retail level? Two reasons. Volume limitations and product segmentation. So a winery in Napa that wants to direct ship into Indiana is limited to 45,000 liters of wine a year. There are no such limitations on retailers in Indiana. Also, because the winery is limited in volume and because it's a winery, it can only ship its product. So if you've got four labels of wine, it's only shipping four labels of wine. A retailer, however, can, at least under Indiana law, an in-state retailer, can sell wine, liquor, beer, any number of brands. And so there's not this volume limitation or product segmentation. The fact that there's no volume limitation is just Indiana's choice. Is there any reason why Indiana couldn't enact a statute that says anybody authorized to deliver wine in our state can't deliver more than – and then here, insert a volume? It could, but, Your Honor – It could, but it hasn't. But the point about the volume limitation is that that is how Indiana furthers the interests that are furthered by the three-tier system itself. By requiring the three tiers – So if we were to say something like, under the Supreme Court's cases, an Illinois store can ship wine to Indiana customers to the same extent an Indiana store can do it. And if Indiana thinks that makes a huge inroad on its three-tier system, it can enact a quantity limitation, nondiscriminatory, of course. Right. Presumably, it could, but that is stripping away from the states the flexibility to design their systems as they see fit. Oh, look. That's what the Supreme Court has been about in these cases. Well, I – Every time the state says, we want more flexibility, the Supreme Court says, yeah, but flexibility to engage in discrimination against out-of-state sources is not allowed. Well, I think as this Court recognized in Breidenbaugh, the Webb-Kenyon Act and Section 2 of the 21st Amendment, by allowing states to structure a distribution system and have effectively a tightly regulated system and to regulate imports, there's necessarily – I believe it's Breidenbaugh that begins with the line, this case pits the 21st Amendment, which is in the Constitution, against the Dormant Commerce Clause, which is not. But that didn't persuade the Supreme Court. That – I hope we're not back to just trying to flip the bird to the justices. No. No, we're not, Your Honor. The point about Breidenbaugh, though, is that Breidenbaugh recognized and acknowledged the anti-discrimination principle of the Dormant Commerce Clause in its decision because that stems not from Granholm but from Bacchus. The Court applied that in the Bacchus case. I'm well aware of that if you've looked at the list of counsel. I'm aware of that as well. So the anti-discrimination principle was in the Court's mind when it decided in Breidenbaugh. The anti-discrimination principle is what the Court found violated in Granholm and Tennessee Wine. The idea, though – and Breidenbaugh does a good job of pointing this out. Because the 21st Amendment textually gives states the authority to regulate imports, there's necessarily sometimes going to be a differentiation in treatment between those who participate in the three-tier system and those who don't. But that differentiation – I guess what I'm having a hard time getting on the wavelength of, and maybe you can help here, is why in light of Indiana's prospective regulatory authority – in other words, the state's ability to respond, as Judge Easterbrook is talking about, to a constitutional holding of this Court. They can certainly do that. The legislature can act. Given that reality and what's allowed right now with producers or, I don't know, with wine farms or whatever the statute calls them, I don't know why it is that – why is the state correct that the three-tier system would topple here? I don't understand that. You can respond legislatively with a volume limitation, presumably. And you can set up for purposes of excise tax collection, licensing, permitting, and remission obligations. A few responses to that, Your Honor. First, I'm not suggesting this is a sky-is-falling situation. What I'm suggesting is that the 21st Amendment is supposed to give states flexibility. And I take Judge Easterbrook's point that the Supreme Court has pushed back on that in some respects, but there is nothing about… Yeah, and your adversary is talking – I mean he's definitely – he's just descriptively correct. Hasn't the Court focused in two opinions in some depth on the availability of alternatives? Yes, but in both of those cases, the protectionist intent of the provision at issue was obvious. It was the same thing in Bacchus. It was obvious that in Bacchus and Granholm, the states there were trying to favor in-state wine interests, and it was obvious in Tennessee. But Tennessee wine is not – the justices certainly could have written a two-sentence opinion that said a two-year residency requirement is facially invalid, case over. They didn't, right? They go on and on and on about alternatives and evidentiary-backed showings and the like, right? And aren't they going on and on and on in part to tell us as lower courts how we should approach these questions? Well, I mean I think they're going on and on to address all the arguments there, and of course the court has to follow that. standards out so that we have this very dialogue and we hold the state to those burdens. Yes, and I'm not pushing back on that, but I will push back on the idea that the Sixth and the Eighth Circuits didn't do that, or that the evidence that we produced here is insufficient. Chicago Wine wants to point to the idea that, well, 16 states allow direct shipments and they don't have problems. Well, if that is really the way it's going to be, then the 21st Amendment is not giving states any flexibility. It's allowing a group of states that can do something without any problem to basically control what Indiana has to do because now Indiana, when it comes to justify its three-tier system, according to Chicago Wine, it has to show basically strict scrutiny, that this is absolutely necessary and there are no nondiscriminatory measures that could adequately address it without causing problems. I want to get back to the direct shippers exception because not only are there volume limitations and the like that I've already discussed, but there are far fewer wineries than there are retailers. The record shows that I think about 11,000 wineries in the United States, 464 have obtained direct shippers permits in Indiana, but there are more than 400,000 retailers. So just the administrative burden, the regulatory burden of trying to collect excise tax from every retailer that could then ship. Why doesn't Indiana look at this as an opportunity? An application for a license is almost always accompanied by a fee. And people who pay these fees usually contend the state's making money off our fees. Why doesn't Indiana see this as an opportunity to collect a huge number of remunerative fees? Because the Indiana General Assembly has determined, I guess in this instance. Yeah, that I understand. It is a law. Right, but it is determined. I hope you understand why I'm asking this question. We've been told by the Supreme Court that it isn't really a bright line because the Dormant Commerce Clause is an implication from the actual Commerce Clause and the 21st Amendment is real. We've got this balancing problem. So if the state shows up and says, you know, 400,000 retailers, that's just a lot of retailers. I don't understand why the answer isn't, yeah, but they can all be charged a lot of fees. It's – right? If we're trying to figure out what the state's tools are, which is what the Supreme Court says, we have to think about that. I understand you have to think about that, but I think the point there is that that is suggesting that all the state is concerned about is raising revenue, which is a legitimate 21st Amendment concern, but there's also the concern that even if you have volume limitations on 400,000 retailers, you're going to have a really difficult time preventing oversaturation of the markets with alcohol within the state. And that's exactly what the 21st Amendment is. Assuming the legislature doesn't respond. I'm assuming that they do respond and impose volume limitations. Yeah, they respond with a volume limitation. I must say if you don't – if the out-of-state retailers have to deliver in the same way as the in-state retailers, I don't think you're looking at mass deliveries from New York City. No one in New York City is going to send a fleet of trucks to deliver in Hammond. Yes, but – and I agree with that. They're challenging that as well, but let's assume that challenge doesn't fail. The importation requirement also serves other interests. Again, the direct shipper exception, that accounts for a drop in the barrel of the total amount of alcohol that's consumed within the state of Indiana. Would you define a farm winery for me, please? Yes, farm wineries are small wineries that produce, I think, less than a million gallons of wine a year. That's distinguished from a winery. Yes. Now, a winery – In Drake Yellow. Yes. Now, a winery in another state I don't think constitutes a farm winery, but it can ship into the state on the same terms, subject to the same volume limits. It's just farm winery is how Indiana describes its own wineries. But back to the importation, there are interests served by the importation requirement that just can't effectively be served by the nondiscriminatory measures when we're talking about applying it to the whole system of alcohol consumption. And I think that's what – What are they? The ability to track alcohol that's maybe unhealthy, unsafe. The ability to, I guess, regulate the whole system because so much of the regulation focuses on the wholesale tier. As one of the other circuits, camera 6 or 8, described, the three-tier system is effectively like an hourglass. And in the middle is where the wholesaler tier is at. And that is really where so much of the temperance rationales and so much of the tax collection rationales really play. And I see my time is about to expire. The state asks that the court affirm the judgment below. Thank you, counsel. Anything further, Mr. Tanford? If I may, just a couple quick points. Thank you. First of all, though it's obvious of the 400,000 retailers that are out there somewhere in the United States, the record shows that fewer than 1,200 actually engage in any interstate deliveries and shipping. And even fewer than that would be from Chicago and Cincinnati who could afford to actually drive it across. Secondly, on alternatives, I would direct, remind this court of the statement in Bode v. Heath, that once a state allows any direct shipment, it has agreed that the wholesaler may be bypassed. That's at the core of this case. Indiana allows home deliveries by in-state retailers. They allow the three-tier system to be bypassed by wineries. They allow common carrier shipping by wineries and they trust those common carrier employees to adequately check ID upon delivery. They don't require that out-of-state wineries have a physical presence. They don't require the three-tier system for wineries or brew pubs or this new field of craft distillers. Indiana simply does not have a three-tier system. And even if it did- Well, if we had to estimate what percentage of alcohol products go through wholesalers in Indiana, what would a good estimate be? For wine? Let's do all alcohol products and then we can do wine. Well, I think for spirits, I think it's very, very high. But spirits, we're not asking for representing spirits manufacturers or sellers. For wine, because the Chicago Wine Company is a wine company. It's not a spirits company. For wine, I don't know the answer. I think that I've seen, it's not on the record, but I think that I've seen that it is in the vicinity of 90% that still goes through wholesalers. Well, if it's not in the record, it's not in the record. But it is an interesting question. Really, that's your- I'm curious, just given how much experience, that's your instinct, 90%? There's not a- I would have said, I would have, my guess, that's all it would have been, would have been a lot lower because of the direct shipments from California and the wineries in Michigan and what have you. The problem is that 50% of the wine market is international wine, France, Italy, places like that. They don't have wineries in the U.S., so they're not allowed to direct ship. They have to go through wholesalers and retailers and importers. So you've got this second structure. Yep. Thank you. Okay. Thank you, Mr. Tenford. The case is taken under advisement.